**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2809
_____

PRAXIS ENERGY AGENTS PTE LTD,
                                   Appellant

v.

M/V PEBBLE BEACH, its engines, tackle, apparel and freights
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-17-cv-00559)
District Judge: Honorable Leonard P. Stark
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 19, 2022
_____

Before: CHAGARES, Chief Judge, McKEE and PORTER, Circuit Judges

(Opinion filed: September 27, 2022)
_____

OPINION*
_____

---

*       This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Chief Judge.

Praxis Energy Agents Pte Ltd. ("Praxis") filed this in rem admiralty proceeding against the M/V Pebble Beach (the "Vessel") seeking payment for providing bunkers, or marine fuel, to the Vessel. Praxis argues that the District Court erred in concluding that it did not have a valid maritime lien at the time of the Vessel's arrest in Delaware. It further asserts that the District Court erred in awarding attorneys' fees to the prevailing party under the terms of the relevant contract. For the following reasons, we will affirm.

I.

We write primarily for the parties and recite only the facts essential to our decision. Sithonia Shipholding S.A. ("Sithonia"), as owner of the Vessel, entered into a charter party agreement with Greatwin Carrier (Holdings) Co. Ltd. ("Greatwin"). This agreement provided that Greatwin "will not procedure *[sic]* suppliers, necessaries or services including, inter alia, bunkers on the credit of the owners or the vessel or in the owner's name or the vessel's name . . . ." Appendix ("App.") 174.

During its charter of the Vessel, Greatwin contracted with Praxis to provide bunkers for the Vessel. This contract incorporated by reference Praxis's standard terms and conditions. Section 10.00 of those standard terms and conditions provides that "[i]t is agreed and acknowledged that the sale of Products to the Buyer and/or their acceptance on the Vessel create a maritime lien over the Vessel for the price of the Products[.]" App. 26. The standard terms and conditions further specify that agreement shall be governed by "the General Maritime Law of the United States of America." App. 30.

The bunker delivery was completed, but Greatwin failed to pay Praxis for the bunkers. Approximately one year later, Praxis brought a lawsuit in Brazil against Sithonia, Greatwin, and the manager of the Vessel alleging that they were liable for the cost of the bunkers pursuant to Praxis's standard terms and conditions. The Brazilian court ordered the arrest of the Vessel, and Sithonia provided security to obtain its release.

Praxis filed this in rem action pursuant to Supplemental Rule C of the Federal Rules of Civil Procedure in the United States District Court for the District of Delaware. The District Court ordered a warrant for the arrest of the Vessel. Sithonia thereafter appeared as the owner of the Vessel, posted security to have the Vessel released, and filed counterclaims seeking attorneys' fees under Praxis's standard terms and condition, which award such fees to the prevailing party in a proceeding to interpret or enforce any rights under the contract. As a result of the counterclaims, the District Court ordered Praxis to provide countersecurity under Supplemental Rule E(7)(a).

The parties cross-moved for summary judgment, and the District Court granted Sithonia's motion on the ground that Praxis did not have a valid maritime lien at the time it initiated the action in the District Court. Praxis sought reconsideration of this decision approximately ten months later, which the court denied. The District Court subsequently awarded Sithonia $170,402.01 in attorneys' fees and ordered that all countersecurity posted by Praxis be retained until it had paid the judgment or until all appeals had been ruled upon. Praxis timely appealed.

II.[1]

An in rem action pursuant to Supplemental Rule C requires the existence of a valid maritime lien at the time the action is filed. See Petroleos Mexicanos Refinacion v. M/T King A, 554 F.3d 99, 102 (3d Cir. 2009); see also Supplemental Rule C(1) ("An action in rem may be brought . . . [t]o enforce any maritime lien.").[2] Where security is posted to release a vessel from arrest, "the maritime lien transfers from the vessel" to the security that is substituted for it. Petroleos, 554 F.3d at 104.

Praxis maintains that the District Court held incorrectly that it did not possess a maritime lien against the Vessel at the time of its arrest in Delaware due to its maritime lien being "tied up in the security held by the Brazil Court." App. 187. In support of this argument, Praxis relies principally on the affidavit of its Brazil counsel Dr. Luiz Leonardo Goulart. Dr. Goulart's affidavit was submitted to the District Court for the first time in connection with Praxis's motion for reconsideration.[3] Praxis has not provided a reason for its failure to submit the affidavit at the time when the parties moved for summary judgment. We conclude that the District Court acted within its discretion in not

---

[1] The District Court had subject matter jurisdiction under 28 U.S.C. § 1333(1). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo and may affirm on any basis supported by the record. Panzarella v. Navient Solutions, Inc., 37 F.4th 867, 872 (3d Cir. 2022). We similarly review any determinations of foreign law de novo. Hay Grp. Mgmt., Inc. v. Schneider, 965 F.3d 244, 249 (3d Cir. 2020).

[2] The Commercial Instruments and Maritime Liens Act provides that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner" has a maritime lien on the vessel and may bring an action in rem to enforce it. 46 U.S.C. § 31342(a). Charterers and their agents, among others, are presumed to have authority to procure necessaries. Id. § 31341. It is undisputed that bunkers are necessaries.

[3] The District Court noted that Praxis's motion for reconsideration was itself untimely.

4

considering Dr. Goulart's affidavit on Praxis's motion for reconsideration. See Long v. Atl. City Police Dep't, 670 F.3d 436, 446 (3d Cir. 2012) (noting that we review "whether the District Court's denial of reconsideration constitutes an abuse of discretion"). Because Praxis submitted Dr. Goulart's affidavit for the first time on its untimely motion for reconsideration, we also will not consider it on appeal. See Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985) (concluding that the District Court "appropriately did not consider" an affidavit containing evidence that was available prior to the summary judgment "in its disposition of [a] motion for reconsideration"); Frietsch v. Refco, Inc., 56 F.3d 825, 828 (7th Cir. 1995) (declining to consider an expert affidavit on foreign law submitted on a motion for reconsideration and noting that "[i]t is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him").[4]

We do not consider Dr. Goulart's affidavit and accordingly agree with the District Court's observation that the pleading in the Brazilian action "indicate[s] that the action was brought in connection with the maritime lien." App. 187. While the Vessel was not named as a defendant in the Brazil action, the pleading asserts that the claim was based on section 10.00 of Praxis's standard terms and conditions, which sets forth the clause

---

[4] Praxis argues that we may rely on Dr. Goulart's affidavit under Federal Rule of Civil Procedure 44.1, which provides that "[i]n determining foreign law, the court may consider any relevant material . . . whether or not submitted by a party . . . ." Fed. R. Civ. P 44.1. While we have noted this rule permits us to consider "materials not considered by the District Court," Ferrostaal, Inc. v. M/V Sea Phoenix, 447 F.3d 212, 216 (3d Cir. 2006), it "imposes no duty upon [us] to do so," Bel–Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 440 (3d Cir. 1999).

relating to maritime liens. There is also authority that Brazilian law recognizes maritime liens for necessaries, although the parties dispute whether it would do so under the circumstances here. See Bominflot, Inc. v. The M/V Henrich S, 465 F.3d 144, 148 & n.6 (4th Cir. 2006); William Tetley, Maritime Liens and Claims 1275–77 (2d ed. 1998). Based on the pleading in the Brazil action and the parties' presentation of Brazilian law, we conclude that the District Court did not err in determining that Praxis had a valid maritime lien in the security held by the Brazil court.

## III.

Praxis next argues that the District Court erred in awarding Sithonia attorneys' fees that it incurred in connection with the Delaware action. We review the reasonableness of an attorneys' fee award for an abuse of discretion and any corresponding legal conclusions de novo. See Jama v. Esmor Corr. Servs., Inc., 577 F.3d 169, 173 (3d Cir. 2009).

The District Court awarded Sithonia $170,402.01 in costs and attorneys' fees pursuant to section 22.04 of Praxis's standard terms and conditions. This clause provides that the "prevailing party shall have the right to recover from the losing party its reasonable costs and attorneys' fees incurred" in a proceeding to interpret or enforce any rights under the contract. App. 30.

We conclude that the District Court committed no abuse of discretion in determining the amount of Sithonia's reasonable attorneys' fees. The District Court reviewed invoices submitted by Sithonia's attorneys, determined that the rates charged by those attorneys were consistent with prevailing hourly rates, and found that the amount of

6

work performed was "entirely commensurate with the unusual and complex legal issues involved and the extensive and not entirely foreseeable amount of litigation that occurred in this case." Supplemental Appendix 5 (quotation marks omitted). We further see no legal error in the District Court's interpretation of the "prevailing party" standard provided for in Praxis's standard terms and conditions. The District Court was not required to reduce the attorneys' fees award based on its rejection of some of the arguments that Sithonia made on summary judgment. While Sithonia did not prevail on certain issues, the District Court granted summary judgment in Sithonia's favor on the sole count in Praxis's complaint.[5]

## IV.

For the foregoing reasons, we will affirm the District Court's judgment.

---

[5] Because we will affirm both the District Court's grant of summary judgment in favor of Sithonia and its award of attorneys' fees, we do not reach Praxis's arguments that the court erred in ordering and retaining countersecurity under Supplemental Rule E(7).